LOUIS SCHOENING, Appellant, v. ERWIN CLAUS, Respondent, No. 42912—249 S. W. (2d) 361.

Division Two, June 9, 1952.

120

*Orlando A. Mundwiller* and *John P. Peters* for appellant.

*Wm. H. Wessel, J. H. Mosby* and *Joseph T. Tate* for respondent.

WESTHUES, C.,—Plaintiff Louis Schoening filed this suit in the Circuit Court of Gasconade County, Missouri, wherein he asked damages in the sum of $25,000 for personal injuries sustained as a result of gunshot wounds which it was alleged he received through the negligence of the defendant Erwin Claus. A change of venue was granted and the case was tried in Osage County, Missouri. A jury

returned a verdict for the defendant. From the judgment entered, plaintiff appealed.

The evidence showed the following: On the morning of August 8, 1943, the defendant and his brother, Elmer, in company with Clarence Liebach went to the home of plaintiff Schoening near Swiss in Gasconade County for the purpose of hunting squirrels. The four men and plaintiff's daughter drove to a point east of Highway No. 19 along a road referred to as the Stony Hill Road where they took to the woods to hunt. After hunting for about three hours and at about two o'clock, they were walking toward their car intending to start home. As they were walking along, the dogs began barking at a tree. All the parties went to the tree where it was discovered there were at least two squirrel holes in the tree. Plaintiff climbed the tree and with a stick prodded a squirrel from one of the holes. As the squirrel ran along a limb, defendant Erwin and his brother each shot at the squirrel. They were using 12-gauge shotguns and either No. 4 or 6 shot. Some of the shot struck plaintiff about the face and head resulting in the loss of his left eye and in other serious injuries. Plaintiff was taken to a doctor at Stony Hill for temporary treatment and then to a hospital at Jefferson City, Missouri, where he was treated by Dr. Stanley P. Howard. Plaintiff was in the hospital for fifteen days and then returned to his home. The Claus brothers and Clarence Liebach testified that they paid plaintiff's hospital and medical bills, each paying a third of the amount.

The evidence shows that some time thereafter plaintiff approached the defendant about paying for the injuries plaintiff received. Defendant denied liability and this suit was filed August 5, 1948.

Plaintiff testified that when the hunters reached the tree where the dogs were barking, he was asked by the others to climb the tree to poke the squirrel out of a hole. He testified that he told the men he did not like to do that and for them to be careful and not to shoot while he (plaintiff) was in the tree.

Plaintiff's daughter testified her father admonished the men not to shoot while he was in the tree; that when the shots were fired, Liebach said to Erwin, the defendant, "I figured you would shoot too low."; that she was standing close to Erwin and saw him fire his gun. It was admitted by all that plaintiff immediately came down and that he was bleeding about the face and head. Liebach then went to get the car to take plaintiff to a doctor. While the others were waiting, plaintiff's daughter treated plaintiff's wounds by washing his face and head. She testified that while she was doing this, Erwin, said to plaintiff, "I am sorry that I shot you." When Liebach returned with the car, they took plaintiff [363] to a Dr. Engelbrecht at Stony Hill. A witness, Sam Wiegand, testified he was at Stony Hill when the parties arrived with plaintiff. As to what occurred and about what was said, Wiegand's testimony was as follows:

"A. Well, a car ran up and parked and they let him out of the car, and when they took him out of the car I seen he was just a regular mass of blood. I says, 'What on earth is the matter with Louie Schoening?' And they said, 'Erwin Claus shot him'. I says, 'How did that happen?' Well, they said, 'They treed a squirrel in a hole in a hollow tree, and Schoening went up to run the squirrel out, and when the squirrel jumped out, Claus shot and hit him'.

"Q. And was Erwin Claus hearing that?

"A. Yes sir.

"Q. In the crowd?

"A. Yes sir."

\* \* \* \* \*

"Q. Did Erwin make any response when they undertook to inform you who shot him?

"A. No sir; he did not."

Plaintiff testified that when his daughter was washing his face, the defendant said, "Louie, I am sorry I shot you."

The defendant testified in his own behalf. Defendant's brother and Clarence Liebach also testified for the defendant. The defendant denied he made any statement to plaintiff that he was sorry he shot him and that he did not see witness Wiegand at Stony Hill. Elmer Claus and Liebach testified that they did not hear defendant make any admission that he shot plaintiff and these witnesses also stated they did not see Wiegand at Stony Hill. According to their evidence concerning the positions they occupied while under the tree waiting for the squirrel, it would seem that it was the shot from Elmer's gun that struck plaintiff. These three men also gave a different account of what occurred immediately before the shooting. According to their evidence, it was plaintiff who insisted on going to the tree where the dogs were and that plaintiff volunteered to climb the tree; that he gave no warning about not shooting while he was in the tree. These witnesses testified that they thought they had enough squirrels and wanted to go home but that plaintiff insisted on going to the tree. According to the record, the number of squirrels that had been shot increased as the trial of the case progressed. At page 65 of the record, the number was five; at page 115, it was about "eight, ten or eleven"; at page 158, it was "eleven or more." For the sake of the curious, we add that the squirrel in the tree, where plaintiff was injured, was added to the bag. The Claus brothers evidently changed their minds about having enough squirrels because they shot this last one even though human life was endangered.

Plaintiff briefed only two points: First, error was assigned to the giving of an instruction on accident. It is plaintiff's contention that the evidence did not justify such an instruction. The instruction complained of reads as follows: "The court instructs the jury

that, if you believe from the evidence that the injury to the plaintiff was the result of an accident which could not have been foreseen by an ordinarily and reasonable person, then your verdict should be in favor of defendant.''

Plaintiff's contention must be sustained. The record contains no substantial evidence justifying a finding that plaintiff's injuries were the result of an accident as that term is understood in the law of negligence. In 1 C.J.S. 438, Negligence, we read the following: ''Considering an accident as an occurrence to which human fault does not contribute, the term 'accident' has been defined variously as a casualty which could not be prevented by ordinary care and diligence; an event happening unexpectedly and without fault; an event resulting in damage or injury, proceeding from an unknown cause, or from a known cause without human agency or without human fault; an event which occurs without negligence of either party involved; the happening of an event without fault or negligence on the part of anyone; an injury which occurs without being caused by negligence; an incident that [364] could not have been reasonably foreseen, anticipated, prevented or provided against; * * *.''

The defendant's evidence shows that two shots were fired while plaintiff's evidence indicated only one shot was fired. We assume for the purpose of this case that the defendant and his brother each fired one shot. Note what these men said about the shooting. The defendant's testimony was as follows:

''Q. Did you see the squirrel run out?

''A. Yes sir.

''Q. How were you carrying your gun at that time, when you pulled the trigger?

''A. I pulled the trigger after I seen it run across the limb.

''Q. You pulled the trigger?

''A. Yes sir; I cocked the trigger, and I throwed my gun up as the squirrel crossed the limb, and got to the end of the limb and I cracked down on him.

''Q. Oh, are you attempting to say now, or admitting now, that you fired a shot at that squirrel?

''A. I never did deny that.''

Elmer Claus testified as follows:

''Q. Now, when Louie was poking up there in the tree, what were you and the others, if you saw them—what were you doing?

''A. Well, I was doing nothing but watching the squirrel, with my gun in the air, and my trigger open, waiting for the squirrel to come out of the hole. And when the squirrel came out, as it went over the limb, I cracked down on it.''

It was one of these shots which injured plaintiff. The defendant, as well as his brother, knew that plaintiff was in the tree; in fact,

he was in plain view of them as they watched him prodding the squirrel. The evidence refutes any idea of accident.

The only evidence pointed out by defendant to justify an instruction on accident was contained in a statement which the defendant's attorney claimed he obtained from Dr. Howard after the doctor had treated plaintiff. The doctor testified he did not, remember ever making such a statement. Plaintiff says he did not make any such statement to Dr. Howard unless he was out of his head at the time. The statement as written by attorney for the defendant is in part as follows:

"'Louis Schoening said it was just one of those things, unavoidable, and it was not Erwin's fault.

"'Louis Schoening said Erwin was one of his best friends, had no hard feelings, because of the accident and was not expecting to hold Erwin liable.'"

The statement, even if made to Dr. Howard by plaintiff, was a conclusion and nothing more.

The cases cited by the defendant in support of his contention do not support him. In each case the court pointed out that to justify an instruction on accident there must be evidence to support it. Note in Doody v. California Woolen Mills Co., Mo., 216 S.W. 531, l.c. 535 (8), where plaintiff was injured when he and one Waller were attempting to carry a carboy of acid, there was evidence that Waller stumbled on a bare floor causing the carboy to fall. The same rule was announced in Henry v. Grand Avenue Ry. Co., 113 Mo. 525, 21 S.W. 214, where there was evidence that plaintiff slipped and fell in the street and did not fall because of any negligence of the defendant. See also Kaley v. Huntley, 333 Mo. 771, 63 S.W. (2d) 21, l.c. 25 (13,14). In the case before us there was no evidence that any gun was caused to be discharged through accident. The giving of the instruction on accident was error.

The second point briefed by plaintiff is that plaintiff offered and the court refused an instruction embodying the theory that if the two Claus brothers acting together negligently injured plaintiff, then each would be liable. The evidence did not justify such an instruction. If some shot fired from each gun struck plaintiff, then each would be liable. However, if plaintiff's injuries were the result of the shot fired by Elmer, Erwin would not be liable. Berry v. St. Louis, M & SE R. Co., 214 Mo. 593, 114 S.W. 27. The court was correct in refusing to give such an instruction.

The judgment is reversed and the cause remanded. *Bohling* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.